UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEANNA MCKINNIE,

      Plaintiff,

v.                                                                Case No.  8:22-cv-02802-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

      Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

### I.    Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 230-31).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 132-35, 138-43).  Plaintiff then requested an administrative hearing (Tr. 144).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 38-67).  The ALJ held a supplemental hearing (Tr. 801-14).  Following the hearings, the ALJ issued an

_____

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 8-26). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1980, claimed disability beginning October 28, 2019 (Tr. 98). Plaintiff obtained a high school education (Tr. 269). Plaintiff's past relevant work experience included work as an insurance clerk and policy holder information clerk (Tr. 19-20). Plaintiff alleged disability due to lupus, hypertension, migraines and sleep apnea (Tr. 98, 112).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2025 and had not engaged in substantial gainful activity since October 28, 2019, the alleged onset date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: systemic lupus erythematosus, degenerative joint disease of the knees, migraine headaches, chronic obstructive pulmonary disease, and obesity (*Id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-15). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [Plaintiff can] lift and carry ten pounds occasionally and smaller items frequently; stand and walk two hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch or crawl; occasionally operate foot controls with the right lower extremity and frequently operate foot controls with the left lower extremity; frequently reach, handle, finger, feel, push and pull with bilateral upper extremities; avoid even moderate exposure to hazards, humidity and wetness, temperature extremes, vibration and pulmonary irritants, and only occasionally operate a motor vehicle.

(Tr. 15).   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16-19).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work (Tr. 19-20).   Given Plaintiff's background and RFC, the VE testified that Plaintiff could also perform other jobs existing in significant numbers in the national economy, such as a charge account clerk, call out operator, and order clerk (Tr. 20-21).   Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff argues here that the ALJ erred by finding that her migraine headaches were a severe impairment but then failing to include more limitations in her residual

functional capacity, such as limitations in cognitive functioning or the need to avoid bright lights or loud noise, to account for the migraines. Plaintiff also argues that the ALJ erred in failing to find her obstructive sleep apnea a medically determinable impairment. For the reasons that follow, the ALJ applied to apply the correct legal standards, and the ALJ's decision is supported by substantial evidence.

A claimant's RFC is the most work he can do despite any limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence. 20 C.F.R. §§ 404.1545(a)(2), (e), 416.945(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). In the end, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor").

Here, with respect to Plaintiff's complaints of migraine headaches, the ALJ noted that Plaintiff alleged that she had two to three migraine headaches a week that required her to retreat to a dark and quiet area, and that her medication caused drowsiness (Tr. 16).

The ALJ, however, found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence (*Id.*).  The ALJ explained:

> As for claimant's migraines, she has reported recurring migraine symptoms to providers.  Her migraines have been treated with various medications, including Topiramate and Sumatriptan.  She has reported pain levels of 10/10.  However, the claimant's allegations of being incapacitated during these migraine episodes due to light and sound sensitivity do not find substantial clinical support in the record.  For example, providers have diagnosed the claimant's migraines as not intractable and without aura or status migrainosus, including in records from March 2020, May 2020, and September 2020.  The claimant's allegations of 10/10 pain must be evaluated in light of the evidence showing that providers routinely described her as being in no acute distress.  Moreover, while the claimant alleges migraines occurring several times per week, these have not been reflected in her mental status examinations, which have consistently shown normal cognitive findings.
>
> Accordingly, due to the inconsistencies discussed above, the undersigned finds that the claimant's allegations are not fully supported in the evidence of record.

(Tr. 18 (exhibit citations omitted)).  The ALJ, in determining Plaintiff's RFC, stated that her migraines and fatigue/drowsiness due to side effects of medications had been accommodated with environmental precautions and a restriction on the use of a motor vehicle (Tr. 19).

The ALJ's RFC determination as it relates to Plaintiff's migraine headaches is supported by substantial evidence.  The ALJ discussed Plaintiff's normal cognitive findings upon examination in which the examiners generally described Plaintiff as alert and oriented with good judgment, interaction, and comprehension (Tr. 461, 500, 531, 587, 636).  The ALJ noted that both Dr. Martinez and Dr. Ramani diagnosed Plaintiff with migraine without aura and without status migrainosus and not intractable (Tr. 479, 482,

487, 614, 635, 638).   ARNP Lape similarly diagnosed migraine, not intractable and without status migrainosus (Tr. 693).  As noted by the ALJ in his decision, Dr. Martinez, Dr. Ramani and ARNP Lape noted that Plaintiff displayed no acute distress on January 20, 2020, February 24, 2020, May 5, 2020, September 20, 2020, and December 24, 2020. (Tr. 487, 614, 639, 654).

The ALJ further found persuasive the opinion of Dr. Silverman, a consulting physician, who completed a medical statement of ability to do work-related activities and opined that Plaintiff could perform work consistent with sedentary exertion with some limitations (Tr. 18 (citing Tr. 723-32)).  With regard to environmental limitations, Dr. Silverman opined that Plaintiff could frequently operate a motor vehicle and tolerate exposure to dust, odors, fumes and pulmonary irritants, and could occasionally work around unprotected heights, moving mechanical parts, humidity and wetness, extreme temperatures and vibrations (Tr. 727).  She found that Plaintiff could frequently be exposed to loud noise such as heavy traffic (*Id.*).  The ALJ found Dr. Silverman's opinion was generally consistent with the overall record, but rejected Dr. Silverman's limitation on loud noises as she did not provide an explanation for the limitation (Tr. 18-19).  The ALJ explained that there was no long-term clinical support for Plaintiff's alleged phonophobia (Tr. 19.)

Plaintiff points to a single episode where she was admitted to the hospital for intractable migraines.  Plaintiff was treated at Tampa General Hospital on November 4, through 8, 2019, at which time she complained of flu-like symptoms and a headache with photophobia and phonophobia (Tr. 355-442).  Plaintiff was treated with a "headache

cocktail," and reported that the headache completely resolved (Tr. 359, 361). Later examination revealed no photophobia or visual disturbance (Tr. 362). The headache returned, but improved with medication (Tr. 370, 372, 384, 387).

Plaintiff essentially argues that the ALJ's finding that Plaintiff had the severe impairment of migraine headaches required the ALJ to add additional limitations in her RFC. This argument misses the mark. The mere existence of an impairment "does not reveal the extent to which [it] limit[s] her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Plaintiff also argues, in essence, that there is evidence in the record that could support a different RFC determination. This is outside of the scope of this Court's review. *See id.* at 1213 ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]'....") (alterations in original). The question is not whether there is evidence in the record supporting a finding that Plaintiff has non-exertional limitations in the ability to focus and concentrate and the need to avoid bright lights or loud noises due to her migraine headaches, but whether the ALJ's finding that Plaintiff can do sedentary work with the non-exertional limitations he assessed is supported by substantial evidence. Here, for the reasons explained above, it is.

The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. ----; 139

S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Id.*  In other words, the Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  On this record, Plaintiff's argument fails.

While she does not raise it as a separate issue, Plaintiff also argues that the ALJ's finding that her obstructive sleep apnea was not a medically determinable impairment was error.  Specifically, the ALJ found that Plaintiff had not undergone a sleep study nor was she treated with a CPAP device (Tr. 14).  Plaintiff recognizes that the ALJ specifically stated that, even if her sleep apnea was medically determinable, he accounted for Plaintiff's complaints of fatigue and cognitive difficulties in determining her RFC (*see id.*).  Plaintiff nonetheless argues that "the issue of the claimant's migraine headaches and obstructive sleep apnea are inextricably intertwined, and finding that the claimant's sleep apnea is not a medically determinable impairment, taints the Administrative Law Judge's analysis" (Doc. 20 at 7).

Before formulating an RFC, the ALJ must consider the medical severity of a claimant's impairments.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   An impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522(a), 416.922(a).  To establish a severe impairment, the claimant is only required to show that the "impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Schink v. Comm'r of Soc.*

10

*Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019). However, if an ALJ errs in finding that a claimant's impairments are not severe at step two, such error is harmless when the ALJ finds that the claimant has at least one severe impairment. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment, and that finding is all that step two requires."); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [the plaintiff] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."). Therefore, to the extent Plaintiff seeks remand due to the ALJ's failure to find that her obstructive sleep apnea was a severe impairment, any such error is harmless because the ALJ found that Plaintiff had other severe impairments and proceeded to step three of the sequential analysis (Tr. 13-15).

Nor does Plaintiff demonstrate reversible error in the ALJ's consideration of Plaintiff's obstructive sleep apnea in formulating her RFC at step four. The ALJ recognized Plaintiff's complaints of fatigue and cognitive difficulties but found that they were not consistent with her normal mental status examinations, and the objective neurological evidence (Tr. 17 (exhibit citations omitted)).

This finding is supported by substantial evidence. Plaintiff reported fatigue and some of her treating physicians noted her fatigued appearance (Tr. 459, 503, 506, 509, 612, 639, 642, 645, 648, 692). However, upon each examination, ARNP Lape found that

Plaintiff was alert and active, with a normal mood, good judgment, and oriented to time, place and person (Tr. 445, 448, 451, 454, 458).   ARNP Lape further reported that Plaintiff's recent and remote memory were normal and that she had good insight and judgment (Tr. 583, 587, 591, 595, 654, 658, 663, 667, 671, 675, 678, 683, 688, 692).   Dr Ramani similarly found Plaintiff to be pleasant, cooperative, and alert and oriented, with good interaction and comprehension (Tr. 500, 503, 506, 509, 544, 612, 614, 636, 639, 642, 645, 648).

The neurological evidence similarly supports the ALJ's findings.   Plaintiff's neurological exam while in the hospital was essentially normal (Tr. 385).   Dr. Martinez found no focal sensorial motor deficits and Plaintiff denied memory loss (Tr. 487). Plaintiff's neurological exams by Dr. Ramani and ARNP Lape were repeatedly within normal limits (Tr. 500, 503, 506, 509, 612, 614, 636, 639, 642, 645, 648).   ARNP Lape found Plaintiff's gait to be normal and she had grossly intact cranial nerves and sensation (Tr. 458, 462).   Each time she was examined by Dr. Ramani, Plaintiff's gait was normal and she had no motor or sensory deficits (Tr. 745, 748, 752).   Dr. Martinez similarly found no neurologic abnormalities (Tr. 480, 482).

Plaintiff has not cited any objective evidence in the record that her obstructive sleep apnea causes environmental or other limitations on her ability to work and the mere existence of that impairment does not prove the extent to which it may limit her ability to work.   *See Hutchison v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical

12

standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."); *Moore*, 405 F.3d at 1213 n.6 ("Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation.  However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (emphasis in original). Thus, the Plaintiff has failed to establish reversible error in the ALJ's assessment of her obstructive sleep apnea.

### V.    Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1.    The decision of the Commissioner is affirmed.

2.    The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on November 9, 2023.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE